UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| NICKALOS H.[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil No. 3:25-cv-01809-GCS |
| | ) | |
| COMMISSIONER of SOCIAL SECURITY, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff, through counsel, seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").[2]

### PROCEDURAL HISTORY

On April 4, 2022, Plaintiff filed applications for DIB and SSI alleging a disability onset date of December 23, 2021. After holding an evidentiary hearing on July 10, 2024, an Administrative Law Judge ("ALJ") denied the application on July 25, 2024. (Tr. 14-36).

---

[1]   Plaintiff's full name will not be used in this Memorandum & Order due to privacy concerns. *See* FED. R. CIV. PROC. 5.2(c) and the Advisory Committee Notes thereto.

[2]   This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. § 636(c). *See* (Doc. 11).

On July 23, 2025, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final agency decision subject to judicial review. (Tr. 1). Plaintiff exhausted administrative remedies and filed a timely complaint with this Court.

### ISSUES RAISED BY PLAINTIFF

Plaintiff raises the following issues:

1.  The ALJ erred in failing to account for Plaintiff's limitations in the use of the right extremity.

2.  The ALJ erred by failing to account for limitations in social functioning in the residual functional capacity assessment.

3.  The ALJ failed to address alleged limitations in sitting.

### APPLICABLE LEGAL STANDARDS

"The [SSA] provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 587 U.S. 97, 98 (2019) Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)); *Cain v. Bisignano*, 148 F.4th 490, 496 (7th Cir. 2025).

To determine whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform his former occupation? and (5) Is the claimant unable to perform any other work? *See* 20

C.F.R. § 404.1520.

An affirmative answer at either step 3 or step 5 leads to a finding that the claimant

is disabled. A negative answer at any step, other than at step 3, precludes a finding of

disability. The claimant bears the burden of proof at steps 1–4. Once the claimant shows

an inability to perform past work, the burden shifts to the Commissioner to show the

claimant's ability to engage in other work existing in significant numbers in the national

economy. *See Sevec v. Kijakazi*, 59 F.4th 293, 298 (7th Cir. 2023); *Fetting v. Kijakazi*, 62 F.4th

332, 336 (7th Cir. 2023) (citations omitted).

It is important to recognize that the scope of judicial review is limited. "The

findings of the Commissioner of Social Security as to any fact, if supported by substantial

evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Accordingly, this Court is not tasked

with determining whether or not Plaintiff was, in fact, disabled at the relevant time, but

whether the ALJ's findings were supported by substantial evidence and whether any

errors of law were made. *See Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022)

(citations omitted). The Supreme Court defines substantial evidence as "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*,

587 U.S. at 103; *Pufahl v. Bisignano,* 142 F.4th 446, 454 (7th Cir. 2025) (citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken

into consideration, but this Court does *not* reweigh evidence, resolve conflicts, decide

questions of credibility, or substitute its own judgment for that of the ALJ. *Pufahl*, 142

F.4th at 454 (7th Cir. 2025) (citations omitted). Though judicial review is deferential, it is

not abject; this Court does not act as a rubber stamp for the Commissioner. *See Stephens*,

888 F.3d at 327 (citations omitted).

## THE DECISION OF THE ALJ

The ALJ followed the five-step analytical framework described above. He determined that Plaintiff met the insured status requirements through June 30, 2027, and Plaintiff had not worked at the level of substantial gainful activity since his alleged onset date of December 23, 2021. The ALJ found that Plaintiff had the following severe impairments: status-post cerebral vascular accident with residual right-side weakness, depression, and adjustment disorder. (Tr. 20-21).

The ALJ found Plaintiff had the residual functional capacity ("RFC") "to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he can occasionally climb ramps and stairs but can never climb ladders, ropes, or scaffolds. He can frequently balance, stoop, kneel, crouch, and crawl. He is limited to frequent reaching in all directions and frequent handling and fingering with his right upper extremity. He should avoid concentrated exposure to extreme cold, extreme heat, and humidity. He should avoid exposure to work hazards such as unprotected evaluations and working near dangerous moving machinery. He would need to use one cane when ambulating more than 100 yards. The claimant can learn and perform detailed but not complex tasks." (Tr. 20-21). Thus, the ALJ found Plaintiff was not disabled.

## THE EVIDENTIARY RECORD

The Court has reviewed and considered the entire evidentiary record in preparing this Memorandum & Order. The Court finds the ALJ's summary of the record in his

decision, when compared with the points raised by Plaintiff, is sufficiently comprehensive. Therefore, there is no need to summarize it again here.

### DISCUSSION

The Court addresses Plaintiff's first argument that the ALJ erred in failing to account for Plaintiff's limitations in the use of the right upper extremity. The Court agrees that the ALJ did not adequately explain his assessment of Plaintiff's subjective complaints. Specifically, the decision fails to explain why stable findings and no evidence of worsening is inconsistent with Plaintiff's subjective complaints. Based on the foregoing, the Court finds that remand is required for a proper evaluation of Plaintiff's subjective symptoms.

The ALJ is "in the best position to determine a witness's truthfulness and forthrightness . . . [and thus, the] court will not overturn an ALJ's credibility determination unless it is 'patently wrong.'" *Shideler v. Astrue*, 688 F.3d 306, 310–311 (7th Cir. 2012) (quoting *Skarbek v. Barnhart*, 390 F.3d 500, 504–505 (7th Cir. 2004)). But, when the credibility determination rests on "objective factors or fundamental implausibilities rather than subjective considerations [such as a claimant's demeanor], appellate courts have greater freedom to review the ALJ's decision." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). When making the credibility determination, "an ALJ must adequately explain his credibility finding by discussing specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013); SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016)

(superseding SSR 96-7p).[3] Additionally, while an ALJ is not required to provide a complete written evaluation of every piece of testimony and evidence, reversal and remand is required where the ALJ "provides nothing more than a superficial analysis[.]" *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004). As such, an ALJ cannot simply state that an individual's allegations have been considered or that the individual's allegations are not credible. Rather, the ALJ must "give[] specific reasons for [a credibility] finding, supported by substantial evidence." *Myles v. Astrue*, 582 F.3d 672, 676 (7th Cir. 2009).

The process for evaluating a claimant's symptoms is organized around two major steps. First, the claimant must provide objective medical evidence of a medically determinable impairment or combination of impairments that reasonably could be expected to produce the alleged symptoms. *See* 20 C.F.R. § 404.1529(a)-(b). Second, after the claimant satisfies the first step, the ALJ must then evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. *See* 20 C.F.R. § 404.1529(c). In evaluating allegations of pain, adjudicators are directed to consider whether the symptoms are "consistent with the objective medical [evidence] and other evidence in the individual's record." SSR 16-3p, 2016 WL 1119029, at *2 (Mar. 16,

---

[3]     SSR 96-7p referred to a claimant's "credibility," but SSR 16-3p removed that term to "clarify that subjective symptom evaluation is not an examination of the individual's character." SSR 16-3p, 2016 WL 1119029, at * 1 (Mar. 16, 2016). Instead, ALJs are reminded to "consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that an individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms," as consistent with the regulations. *Id*. Under either SSR version, the outcome of this case would be the same.

2016). *See also* 20 C.F.R. § 404.1529(a) (explaining that the agency considers both "objective medical evidence and other evidence" in evaluating whether an impairment affects activities of daily living and the ability to work).

Objective medical evidence is merely one factor to be considered, and an ALJ is not free to "disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual." SSR 16-3p, 2016 WL 1119029, at *5 (Mar. 16, 2016). Other factors that the ALJ should examine include "daily activities, allegations of pain, aggravating factors, types of treatment received and medication taken, and 'functional limitations.'" *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009) (quoting 20 C.F.R. § 404.1529(c)(2)-(4)). An ALJ may not disregard subjective complaints "solely because they are not substantiated by objective medical evidence." *Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015); *Vanprooyen v. Berryhill*, 864 F.3d 567, 572 (7th Cir. 2017) (quoting *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009)). *See also Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004) (stating that "[p]ain is always subjective in the sense of being experienced in the brain."). "[P]ain alone can be disabling . . . [therefore] [t]estimony of severe pain cannot be disregarded simply because it is not supported by objective medical evidence." *Stark v. Colvin*, 813 F.3d 684, 688 (7th Cir. 2016). An ALJ's "failure to adequately explain his or her credibility finding . . . is grounds for reversal." *Minnick v. Colvin*, 775 F.3d 929, 937 (7th Cir. 2015).

Here, the ALJ found that Plaintiff's "medically determinable impairments significantly limit the ability to perform basic work activities as required by SSR 85-28."

(TR. 20). Even so, the ALJ concluded: "[a]fter careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements about the intensity, persistence and limiting effects of these symptoms, are not entirely consistent with the medical evidence and other evidence in the record. . . ."

(Tr. 24). Specifically, the ALJ found:

> The preponderance, the evidence supports the claimant has the residual functional capacity for sedentary work with additional limitations due to the residual effects of right-side weakness from his stroke in 2007. Because of his right upper extremity weakness in grip and spasticity in his right hand, he is further limited to frequent reaching, handling, and finger with his right upper extremity (as opined by the State agency doctors) and never climbing ladders, ropes, or scaffolds. Due to his right lower extremity hemiparetic gait, he should avoid exposure to work hazards, and can occasionally climb ramps and stairs and frequently balance, stoop, kneel, crouch and crawl. As a precautionary measure, he should avoid concentrated exposure to cold, heat, and humidity, as well he should be allowed use of a cane for distances longer than 100 yards. Said limitations consider the claimant's right side extremity weakness, spasticity in his right hand and upper arm, and hemiparetic gait and are reasonable in the context of his physical examinations and continued activities of daily living.
>
> Greater limitation has not been proven on this record. The claimant testified to having significant issues with the use of his right upper extremity to the point he cannot even grab a can of soda. The claimant's deficits began with his stroke in 2007. However, he plays video games using both hands, dresses himself, drives, continues to volunteer working 2 hours a day picking up trash, and was able to work as a housekeeper at a hotel, which included changing bedding and cleaning rooms, and which only ended because of the pandemic (See Exs. 5E; 9E; 11F/3; Hearing Testimony). The claimant lives alone and performs all his household chores and obligations (Ex. 5E; 9E). These activities are simply not consistent with the extreme allegations to which he testified. Further, the medical evidence notes some spasticity in his right hand that loosens when he relaxes his hand, and that his strength in his right upper extremity has actually improved (See Exs. 17F/57; 18F/16).

(Tr. 28).

Here, the ALJ's evaluation of subjective symptoms lacks a clear connection between the Plaintiff's symptom testimony and the objective medical record. The ALJ recited medical evidence that may fit into the Section 1529 categories listed above but failed to discuss all the factors clearly. *See* (Tr. 26-28). Additionally, the ALJ recounted Plaintiff's function report. (Tr. 32). However, the ALJ is not specific about why he did not fully credit Plaintiff's hearing testimony concerning any of his ailments. Instead, the ALJ relied on generic statements about treatment and medical records not supporting the limitations described by Plaintiff's inability to use his right upper extremity. *See, e.g.*, *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012) (noting that "[s]uch boilerplate language fails to inform us in a meaningful, reviewable way of the specific evidence the ALJ considered in determining that claimant's complaints were not credible.") (internal citation and quotation marks omitted).

The record contains several limitations on how Plaintiff performed his daily activities as to his upper right extremity. For example, Plaintiff testified that his fingers do not work and that his right hand stays closed all the time. He can sometimes open one finger. (Tr. 63). He cannot tie his shoes, cannot grab a soda can, cannot button buttons. He can carry one grocery bag with one finger on the right hand. He can also hold his Xbox controller with his right hand. *Id* at 64. On a typical day, he makes coffee, picks up litter at the community center, plays a video game and walks at night. *Id.* at 66.

Additionally, there are portions of the record which corroborate Plaintiff's hearing testimony: (1) an October 7, 2022 visit with OT Mackenzie Grefe, wherein Plaintiff completed a 9-Hole peg test with both hands, he completed the test in 25 seconds with

the left hand, but was unable to remove and replace one single peg in 60 seconds with the right hand (Tr. 570)[4]; (2) an October 17, 2022 visit with COTA Lynn Alterbery wherein she noted "[h]e was unable to maintain wrist and finger extension without manual assistance from therapist. . . . Patient struggled to pick up peg using tip pinch and to then release and drop the peg." She also noted that his effort was "excellent" (Tr. 594); (3) the April 2024 functional capacity evaluation notes as to fine motor: "completed 0 pegs which is to be considered unable to be scored within the test's normative scoring system" and notes as to gross motor that he performed a box and block test and was able to complete 36 blocks with the left hand an 1 block with the right hand (Tr. 861); and the April 2024 functional capacity report states that Plaintiff was capable of only "50 percent of full forward reach." (Tr. 862). Further, there is no evidence in the record of malingering or symptoms of magnification. The ALJ failed to properly evaluate Plaintiff's testimonial symptoms and that failure directly impacted the RFC and the vocational analysis. As such, the Court finds that the ALJ erred in the manner in which he considered Plaintiff's subjective factors.[5]

The ALJ's error requires remand. "If a decision 'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required." *Kastner v.*

---

[4]     The assessment note from this visit states: "[t]he patient is having difficulty performing Ads and basic daily tasks without increased pain or limitation. . . . UE to perform ADLs without limitation or compensatory strategies." (Tr. 571).

[5]     As the Court finds that the ALJ committed error regarding Plaintiff's complaints and symptoms which requires remand, the Court need not address Plaintiff's other two arguments.

Page **10** of **11**

*Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (internal citation omitted).

This Memorandum & Order should not be construed as an indication that the Court believes that Plaintiff was disabled during the relevant period or that he should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard and leaves those issues to be determined by the Commissioner after further proceedings.

### CONCLUSION

The Commissioner's final decision denying Plaintiff's application for disability benefits and supplemental security income is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court is directed to enter judgment in favor of Plaintiff.

**IT IS SO ORDERED.**

**DATED: July 10, 2026.**

Digitally signed by Judge Sison
Date: 2026.07.10 13:17:25 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**